Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| EL PUEBLO DE PUERTO RICO<br><br>Recurrido<br><br>v.<br><br>LUIS F. MÉNDEZ GONZÁLEZ<br><br>Peticionario | TA2025CE00032 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Utuado<br><br>Casos Núm.:<br>L SC2025G0005;<br>L LA2025G0001;<br>L LA20250002;<br>L FJ2025G0001<br><br>Sobre:<br>Arts. 6.22 y 6.05 Ley de Armas<br>Art. 285 Código Penal<br>Art. 404 Ley Sustancias Controladas |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

*Martínez Cordero, jueza ponente*

## RESOLUCIÓN

En San Juan, Puerto Rico, a 18 de julio de 2025.

Comparece Luis F. Méndez González (en adelante, peticionario) mediante una *Solicitud de Certiorari*, para solicitarnos la revisión de la *Resolución* emitida el 2 de junio de 2025, y notificada el 4 de junio de 2025, por el Tribunal de Primera Instancia, Sala Superior de Utuado.[1] Mediante la *Resolución* recurrida, el foro de instancia declaró *No Ha Lugar* una solicitud de supresión de evidencia interpuesta por el peticionario.

Por los fundamentos que expondremos, se *deniega* la expedición del auto de *Certiorari*.

I

Por hechos acaecidos el 1 de noviembre de 2024, se le radicó una denuncia al peticionario mediante la cual se le imputó haber

---

[1] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA), Entrada Núm. 1, Apéndice Núm. 2. Véase, además, SUMAC TA, a la Entrada Núm. 8, Anejo Núm. 3.

infringido los Artículos 6.05 y 6.22 de la Ley 168 Ley de Armas de Puerto Rico de 2020,[2] los cuales tipifican respectivamente los delitos de portación, transportación o uso de armas de fuego sin licencia y de fabricación, distribución, posesión y uso de municiones.[3] Igualmente, se le imputó la infracción del Artículo 285 de Código Penal de Puerto Rico de 2012[4] y del Artículo 404 de la Ley de Sustancias Controladas de Puerto Rico,[5] los cuales tipifican respectivamente los delitos de destrucción de prueba y posesión sustancia controladas.[6] En esa misma fecha, se celebró la vista de causa para arresto.[7] Celebrada la misma, el tribunal de instancia encontró causa probable, y se le fijó una fianza de $25,000.00 dólares por cada uno de los cargos. Por otro lado, la vista preliminar quedó señalada para el 8 de noviembre de 2024.

Celebrada la vista preliminar, el foro primario encontró causa para acusar por los cuatro (4) delitos y señaló la vista sobre lectura de acusación para el 11 de marzo de 2025.[8]

De ahí, el 8 de abril de 2025, el peticionario instó una *Moción en solicitud de supresión de evidencia*.[9] Adujo, en síntesis, que, el 1 de noviembre de 2024, la policía intervino con el peticionario y que, en ese momento este no estaba cometiendo delito alguno, ni tenía visible ninguna evidencia delictiva que le pudiese conferir a los agentes del orden público motivos suficientes para arrestarlo, detenerlo o privarlo de su libertad, pero lo hicieron. Esbozó que conforme alegaron los agentes, le ocuparon una cartuchera con sustancias controladas y varias municiones de arma de fuego. Añadió que los agentes alegaron que el peticionario se deshizo de un

---

[2] Ley 168-2019, 25 LPRA secs. 466d y 466t.
[3] SUMAC TA, a la Entrada Núm. 1, Apéndice Núm. 1, Exhibits IV y VI.
[4] Ley Núm. 146-2012, 33 LPRA sec. 5378.
[5] Ley 4 de 23 de junio de 1971, 24 LPRA sec. 2404.
[6] SUMAC TA, a la Entrada Núm. 1, Apéndice Núm. 1, Exhibits VIII y X
[7] *Íd.,* Exhibits IV, VI, VIII y X.
[8] *Íd.,* Exhibits V, VII, IX, XI.
[9] *Íd.,* a la Entrada Núm. 1, Apéndice Núm. 3.

arma de fuego lanzándola a un área boscosa al otro lado del patio de la casa en la cual se encontraba. Empero, los agentes penetraron la residencia sin autorización alguna de sus dueños.

En cuanto al motivo para intervenir, el peticionario expresó en su moción que los agentes alegaron que se debía a que, el 26 de octubre de 2024, en horas de la madrugada, él había realizado unos disparos al aire, en la parte de atrás de la gasolinera Mobil, cerca de la Comandancia de Utuado. Expresó que la investigación realizada esa madrugada no produjo arresto alguno, como tampoco se sometió, en esa ocasión ni en los días siguientes, denuncia alguna contra este. Indicó que no fue hasta el 1 de noviembre de 2024 que se sometió una denuncia por los alegados hechos ocurridos el 26 de octubre de 2024. Según se desprende del pliego, una vez celebrada la vista preliminar, el tribunal de instancia determinó no causa para acusar por los alegados disparos al aire, empero, determinó causa por los alegados hechos ocurridos el 1 de noviembre de 2024.

A tenor, el peticionario razonó que, dado al curso decisorio del foro de instancia en la vista preliminar, y dado a que el único motivo que tenían los agentes para intervenir con el peticionario eran los hechos del 26 de octubre de 2024, su detención y arresto del 1 de noviembre de 2024, fue ilegal. Ellos, puesto a que, además, no contaron con ninguna orden de arresto ni de allanamiento, ni lo vieron cometer delito alguno. En consideración a lo anterior, peticionó que la evidencia ocupada en la intervención del 1 de noviembre de 2024 debía suprimirse.

En reacción, el 15 de abril de 2025, el Ministerio Público presentó una *Moción en oposición a supresión de evidencia.*[10] En su escrito, adujo que producto de una investigación, el Agente Reyes Mercado obtuvo información correcta y creíble, la cual corroborada,

---

[10] SUMAC TA, a la Entrada Núm. 1, Apéndice Núm. 4.

y la cual condujo hasta el peticionario en lugar y tiempo. Así, pues, se efectuó la persecución que culminó en un arresto válido y la posterior ocupación de la evidencia en controversia. Acotó, además, que no había mérito al invocar que el peticionario tenía una expectativa de intimidad tras haberse adentrado en una propiedad la cual no le pertenecía. A tenor con lo expuesto, solicitó el señalamiento de una vista.

De ahí, el foro de instancia señaló una vista sobre supresión de evidencia. Según se desprende de la grabación de la vista, durante la misma, el Ministerio Público planteó que la controversia trabada era una de estricto derecho.[11] En consideración a lo anterior, indicó al juzgador de instancia que, en su escrito de oposición, se había realizado un desglose de lo que había declarado el Agente Rafael Reyes Mercado durante la vista preliminar, de manera que se hacía innecesario pasar prueba.[12] En reacción, la representación legal del peticionario expresó que "estaba totalmente de acuerdo".[13] Igualmente, manifestó que no había inconveniente en que el tribunal resolviera conforme a lo que estaba planteado en ambas mociones.[14] Ante lo expresado por ambas partes, el juzgador de instancia cuestionó si la defensa estaba de acuerdo con el recuento de hechos que había realizado el Ministerio Público en su escrito de oposición, para, así, estipularlos.[15] En respuesta, la representación legal del peticionario subrayó que los hechos relatados en el referido escrito estaban esgrimidos tal y como ocurrió en la vista preliminar.[16] Para corroborar lo anterior, el juzgador de

---

[11] Regrabación de la Vista de Supresión de Evidencia, min. 2:04-2:08.

[12] *Íd.*, min. 3:20-3:55.

[13] *Íd.*, min. 3:59-4:01.

[14] *Íd.*, min. 4:01-4:07.

[15] *Íd.*, min. 4:43-5:12.

[16] *Íd.*, min. 5:52-5:59. Conviene mencionar que esta puntualizó que faltaba un hecho en el recuento presentado por el Ministerio Público sobre que, en la vista preliminar, no se habló del permiso que otorgó la señora Zaida Andújar Maldonado. Empero, indicó que no tenía que estar, porque así fue como ocurrió en la vista preliminar. Dicho lo anterior, manifestó que, luego de hacer esa aclaración estaba en posición de estipular cada uno de los hechos. Regrabación de la Vista de Supresión de Evidencia, min. 6:11-6:37.

instancia volvió a preguntar a las partes si, para efectos de la vista, estaban en acuerdo que se sometieran y estipularan los aludidos hechos, dado a que eso sería lo mismo que el agente hubiese declarado de haberse optado por pasar la prueba, a lo cual respondieron en afirmativo.[17]  Así, pues, quedó sometido el asunto para la consideración del tribunal.[18]

Producto de la vista celebrada, el 2 de junio de 2025, el foro recurrido emitió la *Resolución* objeto de revisión.[19] La misma fue notificada el 4 de junio de 2025.[20]  Mediante la *Resolución* recurrida, el tribunal de instancia declaró *No Ha Lugar* la solicitud de supresión de evidencia incoada por el peticionario.

Conviene mencionar que, conforme a la resolución recurrida, la controversia de autos se circunscribía a resolver si la determinación de no causa para acusar en vista preliminar, por el delito que dio base al arresto del peticionario, conllevaba la supresión de la evidencia ocupada, así como si la entrada a la propiedad de un tercero, sin su autorización, resultaba también en la supresión dicha evidencia.[21] En su dictamen el foro de instancia incluyó los veintinueve (29) hechos propuestos por el Ministerio Público.[22] Así, pues, el tribunal *a quo* concluyó que el Agente Reyes

---

[17] *Íd.*, min. 12:16-12:20.

[18] *Íd.*, min. 11:20-11:50 y 12:12-12:20.

[19]  *Íd.*, Apéndice Núm. 2.

[20] *Íd.*, a la Entrada Núm. 8, Anejo Núm. 3.

[21]  SUMAC TA, a la Entrada Núm. 1, Apéndice Núm. 2, pág. 2.

[22] Los referidos hechos fueron los siguientes:

    a.    Que el 31 de octubre de 2024 recibió de parte de unos Agentes una querella sobre unas detonaciones que fueron escuchadas en la Comandancia de Utuado.

    b.    Que las detonaciones provenían del área donde está ubicado el Garaje Gasolina Móvil [*sic*], ubicado cerca de la Comandancia.

    c.    Que las detonaciones fueron escuchadas el 26 de octubre de 2024, a eso de las 3:05 a 3:12 de la madrugada.

    d.    Que el Agente le informó sobre lo sucedido a su supervisor, el Sargento Kevin Vázquez.

    e.    Que el Sargento Kevin Vázquez le imparte instrucciones para que investigue la querella.

    f.    Que el 31 de octubre de 2024 pasa por la Gasolinera Móvil [*sic*], de donde surge la querella, acompañado de la Agente Serrano de la Oficina CRADIC de la Policía, para revisar las cámaras de seguridad de la gasolinera. A esos efectos, llevó consigo un supoena [*sic*] firmado por la Fiscal Daralis Alicea ordenando la obtención del video de cámara de seguridad del negocio.

Mercado tenía motivos fundados para arrestar al peticionario, al creer que había cometido el delito grave de realizar disparos o detonaciones con un arma de fuego el 26 de octubre de 2024, independientemente de que dicho delito se hubiese o no cometido. Por otro lado, expuso que la persecución en caliente del peticionario

---

g. El Gerente de la gasolinera, de nombre Rodolfo, le permitió sustraer el video.

h. Que en el video de la gasolinera se podía ver el área de las bombas, y la parte posterior de la gasolinera donde están los dos car wash. Indica que cerca del área de las bombas había un auto negro y una joven fuera del vehículo. Ve también a Luis F. Méndez González, c/p Pipe, que está hablando con una persona.

i. Que conoce a Pipe porque ha intervenido anteriormente con él y lo ha visto en varias ocasiones en el pueblo de Utuado.

j. Que ve al guardia de seguridad acercándose donde est[á] Pipe con la otra persona y que Pipe pone su mano en el arma del guardia de seguridad como para quitársela. Que el guardia de seguridad se echa para atrás para evadirlo.

k. Luego el guardia de seguridad se aleja y minutos después regresa donde est[á] Pipe. El video muestra que en un momento dado se le cae a Pipe un arma de fuego de su pantalón.

l. Que el arma era negra y que pudo ver el cañón del arma. Pipe se dobla y recoge el arma de fuego y se la coloca en la cintura.

m. Que la toma de las cámaras de seguridad de la parte posterior de la gasolinera, proyectaban donde estaban las máquinas de lavar autos y un negocio que antes era de bebidas, y que allí ve a Pipe de nuevo.

n. Que Pipe al pasar cerca del negocio que era de bebidas toma el arma y hace unas detonaciones.

o. Que sabe que son detonaciones porque cuando salían las balas se veía el destello de los proyectiles.

p. Que Pipe se dirige luego al área de las bombas de gasolina e intenta hacer detonaciones también.

q. Que luego de haber visto el video, llamó a la fiscal y esta le ordenó que lo buscaran y lo arrestaran.

r. Que el 1ro de noviembre de 2024 lo buscó en el Pueblo de Utuado, y en la "Granja" y no lo pudo localizar.

s. Que mientras va subiendo la cuesta de "Judea" con el Sargento Kevin Vázquez, el Agente Erick Méndez y el Agente Rodríguez, ve que Pipe iba bajando la cuesta a pie.

t. Que detiene la patrulla y baja.

u. Que al sospechoso verlo se fue a la huida y se adentra en la propiedad donde ubica la casa de la Sra. Zaida Maldonado.

v. Que el Agente lo sigue hasta el patio de la residencia y ve cuando arroja un bulto color naranja.

w. Que el Agente lo sigue y llegan al final del patio donde no había para donde huir, lo logran arrestar, y le informan el prot[o]colo que va a seguir y lo llevan al Hospital.

x. Que el Agente busca el bulto color naranja que el sospechoso había tirado y localiza un arma de fuego.

y. Que cuando localiza el arma se percata de que el arma estaba martillada, lista para realizar detonación y que tenía puesta un peine.

z. En el bulto negro que tenía consigo el imputado tenía 46 balas 9mm, dinero en efectivo, hojas para confeccionar cigarrillos; y una bolsa verde, roja y amarilla, conteniendo picadura de marihuana.

aa. Que se le hizo la prueba de campo arrojando positivo a marihuana.

bb. Que el imputado no tenía licencia de portar armas.

cc. Que se le hizo la prueba de funcionamiento al arma siendo esta positiva.

permitía al agente entrar al patio, propiedad de un tercero para poder arrestarlo y evitar que escapara o que pudiese destruir evidencia, aun sin la autorización de un tercero o el dueño de la propiedad. Además, concluyó que, en cuanto al registro del bulto naranja sin orden, se enmarcaba en la excepción de la evidencia abandonada al haber sido tirada en un lugar donde no tenía expectativa razonable de intimidad mientras que, en cuanto al bulto negro que llevaba consigo el acusado, era válido por tratarse de un registro incidental al arresto. En consonancia al dictamen emitido, el foro primario ordenó la continuación de los procedimientos.

Insatisfecho con el curso decisorio del tribunal de instancia, el 24 de junio de 2025, el peticionario presentó una *Solicitud de certiorari* en la cual esgrimió los siguientes dos (2) señalamientos de error:

> Primer Error:
> "Erró el Tribunal al considerar y validar unos hechos previamente adjudicados por otro juez en la vista preliminar del caso donde determinó que con estos mismos hechos No existía causa probable para acusar."

> Segundo Error:
> "Erró el Tribunal al validar un arresto ilegal e inconstitucional, efectuado contra el acusado por la Policía de Puerto Rico y entender que la evidencia ocupada en dicho arresto no debía suprimirse."

Mediante *Resolución*, emitida el 7 de julio de 2025, ordenamos al Tribunal de Primera Instancia, Sala Superior de Utuado a remitirnos el enlace para la vista de supresión de evidencia, para lo cual concedimos hasta el 14 de julio de 2025. No habiéndose cumplido con lo ordenado, y habiéndose propiamente presentado el escrito del peticionario mediante el cual solicitó presentar la grabación de la vista, mediante *Resolución* del 15 de julio de 2025, concedimos al foro de instancia un breve plazo adicional, para enviarnos el enlace ordenado y, en su defecto, un breve plazo al peticionario para presentar ante este Tribunal la grabación de la vista.

De ahí, tanto el foro de instancia como el peticionario cumplieron con lo requerido por este Tribunal, por lo que recibimos la grabación de la vista en cuestión. Habiéndose perfeccionado el recurso y con el beneficio de la comparecencia de ambas partes, procederemos a disponer del presente recurso.

II

### A. Expedición de un Recurso de *Certiorari Criminal*

Todo ciudadano tiene un derecho estatutario a que un tribunal de superior jerarquía revise los dictámenes emitidos por los tribunales de jerarquía inferior.[23] A tales efectos, el *Certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior.[24] Conviene destacar, que la discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[25] A esos efectos, la discreción se "nutr[e] de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna".[26] Al amparo de ello, nuestro Tribunal Supremo ha manifestado, en lo pertinente, que la parte afectada por alguna orden o resolución interlocutoria en un proceso criminal, puede presentar un recurso de *certiorari*, mediante el cual apele el dictamen interlocutorio del foro primario.[27] Como corolario de lo anterior, la Regla 40 del Reglamento del Tribunal de Apelaciones[28], esgrime que este

---

[23] *Hernández Jiménez et al. v. AEE et al.*, 194 DPR 378, 382 (2015); *García Morales v. Mercado Rosario*, 190 DPR 632, 638 (2014).

[24] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023)*; 800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).

[25] *Mun. de Caguas v. JRO Construction, Inc.* 201 DPR 703, 712 (2019); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013).

[26] *SLG Zapata-Rivera v. J.F. Montalvo, supra*, a la pág. 43; *Santa Aponte v. Srio. del Senado*, 105 DPR 750, 770 (1977).

[27] *Pueblo v. Román Feliciano*, 181 DPR 679, 690 (2011).

[28] *In re Aprob. Enmdas. Reglamento TA*, supra.

Tribunal deberá considerar los siguientes criterios para expedir un auto de c*ertiorari:*

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan–un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Por otra parte, precisa subrayar que, en virtud de nuestro esquema probatorio, esta Curia le debe gran deferencia a las determinaciones de hecho, la apreciación de la prueba testifical y las adjudicaciones que efectúa el tribunal de instancia.[29] Por tanto, únicamente debemos de interferir con los tribunales de instancia, en el ejercicio de sus facultades discrecionales, cuando existan circunstancias extraordinarias en las que se demuestre que el aludido foro: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[30]

III

En el presente caso el peticionario nos convida a concluir que el foro primario erró al declarar sin lugar su moción de supresión evidencia. Por otro lado, plantea que el referido foro falló en considerar unos hechos previamente adjudicados por otro juez en la

---

[29] *Pueblo v. Rivera Montalvo*, 205 DPR 352, 373 (2020).
[30] *Pueblo v. Rivera Montalvo*, supra, a la pág. 373; *Pueblo v. Irizarry*, 156 DPR 780, 788–789 (2002).

vista preliminar, más aún cuando, mediante esos hechos, se determinó que no había causa para arresto por unos sucesos ocurridos el 26 de octubre de 2024.

Según reseñamos, cuando se presenta ante nuestra consideración un recurso de *certiorari*, nuestro ordenamiento jurídico le confiere discreción a este foro apelativo para intervenir, únicamente, en aquellas determinaciones en las que el foro primario haya actuado de forma arbitraria, cometido un craso abuso de discreción, surja un error en la interpretación o cualquier norma procesal o de derecho sustantivo, o cuando la determinación constituya una grave injusticia. [31] Así, pues, nos dimos a la tarea de evaluar este recurso, así como los documentos que lo acompañaron, para determinar si estaban presente las circunstancias para intervenir. Luego de haber evaluado minuciosamente lo anterior, juzgamos que este recurso de *certiorari* no satisface ninguno de los criterios de la Regla 40 del Reglamento del Tribunal de Apelaciones para intervenir en el mismo.[32] En el recurso, se nos solicitó intervenir en una resolución interlocutoria en la cual el Tribunal de Primera Instancia actuó dentro del ámbito de su discreción judicial. Por otra parte, no surge del expediente señal alguna de que el foro primario haya incurrido en arbitrariedad, prejuicio, ni en un craso abuso de discreción. Por el contrario, observamos que evaluó los planteamientos conforme a derecho y dentro de los parámetros que le son conferidos por ley. Es por ello, que hemos acordado abstenernos de intervenir.

IV

Por los fundamentos que anteceden, se *deniega* la expedición del auto de *Certiorari*.

---

[31] *Pueblo v. Rivera Montalvo*, supra, a la pág. 373; *Pueblo v. Irizarry*, supra, a la pág. 788–789 .
[32] *In re Aprob. Enmdas. Reglamento TA*, supra.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones